IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| BILLY PALMER, #A10002, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. 19-cv-313-NJR |
| JOHN R. BALDWIN, WEXFORD HEALTH SOURCES, INCORPORATED, JOHN R. TROST, JOHN COE,[1] GARY M. REAGAN CASEY DUNCAN, DOCTOR RITZ, and FAIYAZ AHMED,[2] | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Billy Palmer, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff asserts a deliberate indifference claim under the Eighth Amendment against Defendants for failing to properly treat his prostate cancer. He seeks monetary damages.

---

[1] John Coe is listed twice under the list of defendants in the civil rights complaint form used by Plaintiff. (Doc. 1, p. 3). The Court notes, however, that there is only one John Coe in the case caption and described in the allegations. (Doc. 1, p. 1; Doc. 1-2, pp. 1, 3, 5-22). The Clerk of Court will be directed to terminate the second John Coe.

[2] In the list of defendants, Plaintiff identifies "Faiyaz Ahned." (Doc. 1, p. 3). In the Complaint, "Faiyaz Ahmed" is named as a defendant in the case caption and in the statement of claim. (Doc. 1-2, pp. 1, 3). The Clerk of Court will be directed to correct the docket to reflect Defendant Ahmed's proper name as identified in the caption of this Order.

This case is now before the Court for preliminary review of the Complaint[3] pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Plaintiff makes the following allegations: From January 2014 to December 2015, Plaintiff had seven elevated prostate-specific antigen (PSA) levels. (Doc. 1-2, p. 4; Doc. 1, p. 14). During that time, he was treated by Dr. Trost, Menard Correctional Center's on-site physician. (Doc. 1-2, p. 5; Doc. 1, pp. 19, 21, 22, 23, 24). Dr. Ritz was also involved in Plaintiff's treatment and/or referral decisions. (Doc. 1, p. 13). Plaintiff was prescribed Flomax and Hytrin for his elevated PSA and enlarged prostate. (Doc. 1-2, p. 5). Plaintiff did not receive any additional diagnostic testing or treatment for prostate cancer while at Menard. (Doc. 1-2, pp. 18-20).

Following transfer to Lawrence in January 2016, Dr. Ritz and Dr. Coe reviewed Plaintiff's medical chart regarding the need for an oncology consult. At that time, Dr. Ritz noted that, per the records, Plaintiff had a history of elevated PSA and benign prostatic hyperplasia (BPH) but had not had a prostate biopsy and was not diagnosed with prostate cancer. (Doc. 1-2, pp. 5-6; Doc. 1, p. 25). Dr. Coe made a referral to Dr. Gary Reagan, Crossroads Urology and Women's Health.

---

[3] Plaintiff filed his Complaint utilizing the civil rights complaint form designed for use in this District. Under the Statement of Claim is one paragraph and a reference to an attached amended complaint. (Doc. 1, p. 6). There is an attached document titled "First Amended Complaint" that will be treated as the original Complaint in this matter. (Doc. 1-2, pp. 1-22).

2

(Doc. 1-2, p. 6; Doc. 1, pp. 26, 27, 28). Dr. Reagan noted Plaintiff had a history of BPH and elevated PSA and recommended an ultrasound guided prostate needle biopsy. *Id.* Dr. Coe made the referral for the procedure and it was approved by Wexford.[4] (Doc. 1-2, p. 8; Doc. 1, pp. 33, 34).

In April 2016, the biopsy was performed, and the pathology report noted a "prostatic adenocarcinoma." (Doc. 1-2, p. 8; Doc. 1, pp. 35, 37). Dr. Reagan ordered a whole-body nuclear medicine bone scan based on the diagnosis of primary malignant neoplasm of prostate. (Doc. 1-2, p. 9; Doc. 1-1, p. 1). Dr. Coe made the referral for the whole-body scan and it was approved by Wexford based on the new diagnosis of prostate cancer by biopsy. (Doc. 1-2, p. 9; Doc. 1-1, pp. 5-6). Dr. Coe referred Plaintiff back to Dr. Reagan based on the prostate cancer, which was approved by Wexford. (Doc. 1-2, p. 9; Doc. 1-1, p. 7). Plaintiff saw Dr. Reagan on July 11, 2016; he recommended follow-up regarding the prostate cancer but did not offer or provide treatment at that time. (Doc. 1-2, p. 10; Doc. 1-1 p. 8). Based on another referral approved by Wexford, Plaintiff saw Dr. Reagan in December 2016. (Doc. 1-2, p. 11; Doc. 1-2 pp. 10-11). Plaintiff expressed his concerns regarding his prostate cancer, and Dr. Reagan told him it is very common in his age group to have a small area of low-grade prostate cancer. (Doc. 1-2, p. 11 ; Doc. 1-1 p. 12-15). They discussed a repeat ultrasound biopsy as part of an observation protocol. *Id.*

In March 2017, Wexford physicians Dr. Ritz and Dr. Shah approved a request for a urology follow-up and repeat ultrasound-guided prostate needle biopsy. (Doc. 1-2, p. 12; Doc. 1-1, p. 20). Plaintiff saw Dr. Reagan and the repeat biopsy, approved by Wexford, was performed in August 2017. (Doc. 1-1, pp. 22, 26; Doc. 1-2, p. 12). The pathology from the procedure reported an "adenocarcinoma." (Doc. 1-1, p. 27). In September 2017, Dr. Reagan advised Plaintiff of the

---

[4] Wexford Health Sources Incorporated provides medical care to prisoners in IDOC. (Doc. 1-2, p. 2).

results and the available treatment options including an observation protocol versus radical prostatectomy versus radiation therapy. (Doc. 1-2, p. 13; Doc. 1-1, pp. 29-30). Plaintiff chose radiation therapy. *Id.*

In October 2017, Dr. Duncan recommended a CT abdomen and pelvis to rule out adenopathy and metastatic disease, a bone scan to rule out bone mets, and marker (polymark) placement with Dr. Reagan. (Doc. 1-2, p. 14; Doc. 1-1, pp. 34, 37). All were approved by Wexford. (Doc. 1-2, p. 15; Doc. 1-1, p. 38). An ultrasound-guided prostate needle marker placement was performed in January 2018. (Doc. 1-2, p. 15; Doc. 1-1, p. 39). This procedure caused Plaintiff severe discomfort and pain and his "blood was infected by the improper placement of the polymarker." (Doc. 1-2, p. 15).

In February 2018, Dr. Ahmed referred Plaintiff for radiation therapy, which was approved by Wexford. (Doc. 1-2, p. 16; Doc. 1-1, pp. 40-41). On February 20, 2018, Dr. Duncan noted Plaintiff was tolerating radiation therapy well. (Doc. 1-2, p. 16; Doc. 1-1, p. 42). Plaintiff completed radiation therapy in early 2018. (Doc. 1-2, p. 17).

Plaintiff continues to have blood in his urine and pain when he urinates. *Id.* He placed sick call requests for these issues in December 2018 and January and February 2019. *Id.* He was told to wait until he sees Dr. Reagan in March 2019. *Id.*

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

> **Count 1:** **Eighth and/or Fourteenth Amendment claim against Defendants Trost, Ritz, Baldwin, and Wexford for deliberate indifference from January 2014 to December 2015 relating to Plaintiff's prostate cancer.**
>
> **Count 2:** **Eighth and/or Fourteenth Amendment claim against Defendants Coe, Reagan, Duncan, Ahmed, Baldwin, and**

**Wexford for deliberate indifference from January 2016 to February 2018 relating to Plaintiff's prostate cancer.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding their merit. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[5]**

## Discussion

*Count 1*

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To state a claim for deliberate indifference, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

For Count 1, Plaintiff makes a claim against Dr. Trost, Dr. Ritz, IDOC Director Baldwin, and Wexford regarding his medical care from January 2014 to December 2015 while incarcerated at Menard. The claim will proceed against Dr. Trost. He was Plaintiff's treating physician with knowledge of, and apparent control over, Plaintiff's medical care. Plaintiff alleges Dr. Trost was deliberately indifferent to the serious risk of prostate cancer because he did nothing in response to the elevated PSA levels other than order repeat PSA tests. He also alleges Dr. Trost refused to

---

[5] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

provide diagnostic testing to determine if he had prostate cancer. This is sufficient to state a claim for deliberate indifference at this stage.

Although his role is less clear, the claim against Dr. Ritz will also proceed. An exhibit attached to the Complaint indicates Dr. Ritz was aware of Plaintiff's history of elevated PSA and BPH in 2015. (Doc. 1, p. 13). Plaintiff alleges that despite knowledge of the elevated PSA levels, Dr. Ritz refused to provide diagnostic testing to determine if he had prostate cancer. He also alleges Dr. Ritz refused to provide adequate medical treatment for a suspected and known risk of prostate cancer. This is sufficient to state a claim for deliberate indifference at this stage.

The claim against IDOC Director Baldwin, however, will be dismissed without prejudice. Plaintiff includes Baldwin in allegations that groups of the defendants refused to provide particular medical treatment. But Baldwin is not a medical professional, and he was not providing medical care. Wardens and top-level administrators are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Also, he cannot be held liable based solely on his position as an administrator. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (2001) (doctrine of *respondeat superior* does not apply to section 1983 actions). Further, although Plaintiff includes Baldwin in conclusory legal statements against groups of the Defendants, there are no factual allegations that Baldwin had knowledge of Plaintiff's medical condition and was aware of a denial of needed medical treatment. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). There are no allegations of any grievances filed that would have alerted Baldwin to any issues with Plaintiff's medical care. There is a grievance attached as an exhibit from October 2017, but that is after the second biopsy and after Plaintiff chose to have radiation

therapy, and there is nothing to indicate it was seen by Baldwin. There are no allegations that Baldwin was aware of ongoing unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to it. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). The allegations in Count 1 are insufficient to state a claim against Baldwin.

The claim against Wexford likewise fails. When a private corporation has contracted to provide essential government services, such as health care for inmates, the corporation can be held liable under Section 1983 if the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978) and *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a Section 1983 action). Here, Plaintiff has not alleged an unconstitutional policy or custom resulted in delay or denial of medical treatment during the time period at issue. Further, Wexford is not subject to respondent superior liability under Section 1983. *Shields*, 746 F.3d at 789.

Plaintiff also alleges that his rights under the Fourteenth Amendment were violated by Defendants' deliberate indifference to a serious medical need. Plaintiff does not allege a due process or equal protection violation. Because both the Eighth Amendment claim and Fourteenth Amendment claim are based on the same alleged misconduct, and because Plaintiff's case is not enhanced by the addition of a Fourteenth Amendment claim, that claim will be dismissed without prejudice as duplicative. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (courts should analyze similar claims under the most "explicit source[s] of constitutional protection."); *Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (A claim "gains nothing by attracting additional constitutional labels.").

*Count 2*

The claim in Count 2 pertains to Plaintiff's medical treatment after he transferred to Lawrence. Plaintiff alleges that despite suspicion of possible prostate cancer, following the first needle biopsy confirming prostate cancer, Dr. Coe, Dr. Reagan, Dr. Duncan, Dr. Ahmed, IDOC Director Baldwin, and Wexford delayed treatment until February 2, 2018 (when he received radiation therapy).

This claim will proceed against Dr. Coe. He was Plaintiff's treating physician at Lawrence. He had knowledge of, and apparent control over, Plaintiff's medical care. He was involved in the referrals to Dr. Reagan and was aware that Plaintiff did not receive treatment for prostate cancer following the diagnosis in April 2016. These allegations are sufficient to state a claim for deliberate indifference at this stage.

The claim will also proceed against Dr. Reagan. Plaintiff alleges Dr. Reagan was deliberately indifferent to a serious medical need when he decided not to offer or provide treatment after the prostate cancer diagnosis in April 2016. He also bases his claim on Dr. Reagan's failure to advise him of the available treatment options at that time. Although Dr. Reagan is a private physician, Plaintiff alleges he acted under the color of state law. A private physician can be considered a "state actor" who may be liable for constitutional violations under Section 1983. *See Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (plaintiff in Section 1983 action must show that the constitutional violation was committed by a person acting under the color of state law). Private physicians may be deemed state actors when they assume the State's duty to provide medical care to persons within its custody, such as prison inmates. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir. 2009); *West v. Atkins*, 487 U.S. 42, 54–57 (1988). To determine whether a private physician can be considered a state actor, the Court must look to

the relationship between the physician and the State and whether the care was provided pursuant to an agreement to fulfill the State's "obligation to provide for the inmate's medical needs." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 672 (7th Cir. 2012). Where a private physician or hospital voluntarily agrees to treat inmates, the provision of such services may be considered state action. *Id.* at 673. Dr. Reagan provided medical care to Plaintiff voluntarily at the State's request. Plaintiff was repeatedly referred to Dr. Reagan by the prison physicians and, according to Plaintiff, Dr. Reagan determined the course of his medical care and treatment. At this stage, the allegations in the Complaint are sufficient to state a deliberate indifference claim against Dr. Reagan.

The claim against Dr. Ahmed, however, will be dismissed without prejudice. Although Plaintiff includes Dr. Ahmed in his allegations that a group of the Defendants failed to advise him of treatment options following the first biopsy and prescribed only observation therapy, there are no factual allegations showing Dr. Ahmed was involved in Plaintiff's medical care at that time. Plaintiff provided a detailed chronology of his medical treatment and cites extensively to medical records attached as exhibits. "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). The facts regarding the chronology of Plaintiff's medical treatment and the exhibits show that Dr. Ahmed was involved in the referral and/or approved the *second* needle biopsy. Later, Dr. Ahmed referred Plaintiff for the radiation therapy he chose after the second needle biopsy. The allegations in Count 2 do not support a deliberate indifference claim against Dr. Ahmed.

Similarly, the claim against Dr. Duncan will be dismissed without prejudice. He was not involved in Plaintiff's treatment at the time of the first needled biopsy. Following the *second* needle biopsy, Dr. Duncan recommended a CT abdomen and pelvis to rule out adenopathy and metastatic disease, a bone scan to rule out bone mets, and marker (polymark) placement. Dr. Duncan treated Plaintiff while he was undergoing radiation therapy. There is nothing about this medical treatment that suggests deliberate indifference to Plaintiff's prostate cancer.

Additionally, the claim against IDOC Director Baldwin will be dismissed without prejudice for the reasons previously discussed with respect to Count 1. In sum, there are no allegations that he had any knowledge of Plaintiff's condition, that he was aware of any denial of needed medical treatment, or that he was aware of unconstitutional conduct and facilitated, approved, condoned, or turned a blind eye to it. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Further, as to Wexford, Plaintiff does not allege any specific medical care or treatment that was denied by Wexford. Instead, the allegations in the Complaint show that Wexford repeatedly approved referrals and recommended treatments. Based on the factual allegations and the cited medical records, there was one brief delay in a referral to a specialist following Plaintiff's transfer to Lawrence. The allegations in the Complaint are not sufficient to state a claim that an unconstitutional policy or custom resulted in delay or denial of medical treatment. The claim in Count 2 against Wexford will, therefore, be dismissed without prejudice.

Finally, Plaintiff again alleges that his rights under the Fourteenth Amendment were violated by Defendants' deliberate indifference to a serious medical need. As previously discussed with respect to Count 1, that claim will be dismissed without prejudice as duplicative. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (courts should analyze similar claims under the most "explicit

source[s] of constitutional protection."); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (A claim "gains nothing by attracting additional constitutional labels.").

## Pending Motions

*Motion for Service of Process*

Plaintiff's Motion for Service of Process at Government Expense (Doc. 7), is **DENIED** as moot, as Plaintiff has been granted leave to proceed *in forma pauperis*.

*Motion for Recruitment of Counsel*

Plaintiff filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases, but the district court has discretion under Section 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). When deciding whether to do so, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own, and, if so, whether the difficulty of the case exceeds the particular plaintiff's capacity as a layperson to coherently present it. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir.2007).

Plaintiff states he contacted one law firm but did not receive a response. (Doc. 3, p. 1). The Court finds that, while a response to Plaintiff's effort to obtain counsel is pending, the recruitment of counsel is premature. The Court will remain open to appoint counsel as the case progresses. If Plaintiff does renew his request, he should give the Court rejection letters from at least three attorneys to prove that he has made reasonable efforts to find counsel on his own.

## Disposition

**IT IS ORDERED** that Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice and Motion for Service of Process at Government Expense (Doc. 7) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that **COUNT 1** will proceed against Defendants Trost and Ritz. **COUNT 1** will be dismissed without prejudice against Defendants Baldwin and Wexford. **COUNT 2** will proceed against Defendants Coe and Reagan. **COUNT 2** will be dismissed without prejudice against Defendants Ahmed, Duncan, Baldwin, and Wexford.

The Clerk of Court is **DIRECTED** to **TERMINATE** Ahmed, Duncan, Baldwin, Wexford, and the second John Coe as parties in the Court's Case Management/Electronic Case Filing (CM/ECF) system. The Clerk of Court is also **DIRECTED** to **CORRECT** the docket to reflect Defendant Ahmed's proper name as identified in the caption of this Order.

The Clerk of Court shall prepare for Defendants Trost, Ritz, Coe, and Reagan: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 15, 2019**

_____
**NANCY J. ROSENSTENGEL
Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.